IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SERGIO DANIEL ORTIZ, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | 1:23-CV-03585-ELR |
| | * | *UNDER SEAL* |
| | * | |
| MARJORIE ISABEL MARTINEZ REED, | * | |
| | * | |
| | * | |
| Respondent. | * | |
| | * | |

_____

**O R D E R**

_____

Presently before the Court is Petitioner Sergio Daniel Ortiz's "Motion for *Ex Parte* Expedited Motion for a Temporary Restraining Order" (the "TRO Motion"). [Doc. 7]. The Court sets forth its reasoning and conclusions below.

**I.   Background**

Petitioner and Respondent Marjorie Isabel Martinez Reed "began their relationship in 2018 in Buenos Aires, Argentina, but never married." Verified Expedited Pet. (the "Petition" or "Pet.") ¶ 9 [Doc. 6].[1]  Petitioner is a citizen of

---

[1] The Petition filed in this matter has been verified by Petitioner. See Pet. at 16. "A court is to treat a verified complaint as the functional equivalent of an affidavit[] to the extent the complaint satisfies the standards outlined in the Federal Rules of Civil Procedure." Hill v. Butterworth, 941 F. Supp. 1129, 1136 n.11 (N.D. Fla. 1996) (collecting cases), rev'd on other grounds, 147 F.3d 1333 (11th Cir. 1998).

Argentina, and Respondent is a citizen of Venezuela.  See id. ¶ 1.  "On November 17, 2020, [Respondent] gave birth to" a child with the initials A.D.O.M. (the "Child") in Buenos Aires.  Id. ¶ 10.  Accordingly, the Child is a citizen of Argentina.  See id. ¶ 1.  Between the Child's birth and September 2022, Petitioner, Respondent, and the Child "resided together as a family unit in a Buenos Aires apartment."  Id. ¶ 12.  The Child never traveled to the United States before September 2022.  See id. ¶ 13.  "Petitioner continuously and actively provided and participated in the provision of care for Child throughout his life, including making parental decisions such as schooling and residence decisions."  See id. ¶ 32; see also id. ¶ 22.

In 2022, Petitioner and Respondent agreed that the Child could travel with Respondent to Johns Creek, Georgia from September 27, 2022 through November 13, 2022 so that the Child could meet his maternal grandmother for the first time.  See id. ¶¶ 16.  Petitioner's agreement to this trip "was conditioned on [the] Child's return to Argentina in November 2022."  Id. ¶ 17.  Argentine law requires that "before a child may travel international[ly] in the company of only one parent, the child's other parent must sign a notarized travel authorization."  See id., see also See Cód. Civ. y Com. [Civil and Commercial Code] art. 645(c) (Arg.).[2]  Accordingly, "[o]n August 26, 2022, in order to facilitate [the] Child's September–November . . .

---

[2] The portions of the Argentine Civil and Commercial Code cited herein are reproduced in English and Spanish in Exhibit E to the Petition.  See Pet. at 44–50.

2022 visit to the United States, and future visits that [Respondent] and [Petitioner] might agree upon, [Petitioner] signed a notarized authorization for" the Child "to travel outside Argentina" with Respondent.  See id. ¶ 18, Ex. D.

Respondent and the Child traveled to the United States on September 27, 2022, as planned, and Petitioner and Respondent "frequently communicated by phone during the forty seven-day period they agreed . . . [the] Child could visit the United States." See id. ¶¶ 19, 21.  "Less than a week before" Respondent and the Child's trip to the United States was to end, Respondent "communicated to [Petitioner] that she would not be able to return to Argentina, and that U.S. immigration would prevent her"—and by extension the Child—"from leaving the United States and returning to Argentina on the agreed-upon date of November 14, 2023." See id. ¶ 23.  "On November 17, 2022, [Petitioner] executed a notarized revocation of the" previous authorization he had given "permitting [the] Child to travel outside Argentina in the company of" Respondent.  See id. ¶¶ 25, 27; see also id. Ex. I.   Petitioner subsequently and repeatedly requested that Respondent voluntarily return the Child to Argentina, but Petitioner refused those requests.  See id. ¶ 23.  "In February 2023, [Respondent] and [Petitioner] spoke for the last time, at which point [Respondent] reiterated that she would not return to Argentina and added that [Petitioner] would never see [the] Child again." See id. ¶ 28.  The Child has not been returned to Argentina, and Petitioner believes that the Child and

Respondent currently reside in Fulton County, Georgia.  See id. ¶¶ 24, 27–29, 31, 33, 36.

On August 11, 2023, Petitioner filed this action pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act of 1988 ("ICARA") "to secure the return of" the Child.  See Pet. ¶ 1; [see also Docs. 1, 1-1]. That same day, Petitioner filed his present TRO Motion.  [See Docs. 1-3, 7].

**II.     Legal Standard**

Granting a temporary restraining order ("TRO") is appropriate where (1) the movant seeking that relief is likely to succeed on the merits of his claims, (2) "the TRO . . . is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the TRO . . . would cause to the non-movant," and (4) "the TRO . . . would not be averse to the public interest."  Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1035 (11th Cir. 2001).

> [A] court may issue a [TRO] without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). A TRO may remain in effect for no more that fourteen (14) days after it is issued, though a party may move for one fourteen (14)-day extension of that period. See id. 65(b)(2). After giving notice to the non-movant, a court may also convert a TRO into a preliminary injunction which can remain in effect for the entire pendency of a case. See id. 65(a), (b)(3). And a "court may issue a" TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." See id. 65(c).

**III.   Discussion**

By his TRO Motion, Petitioner asks the Court to:

1. Issue an order prohibiting [Respondent] or any others acting on her behalf or at her direction from removing [the] Child from th[is] [d]istrict pending resolution of this action;

2. Issue an order taking into safe keeping all of [Respondent] and [the] Child's travel documents, including any Argentine, Venezuelan, or American (if one has been issued) passports; . . .

3. Issue an expedited *ex parte* [TRO] requiring the appearance of [Respondent] and Child within fourteen (14) days to determine whether the [TRO] will be converted to a preliminary injunction under Fed. R. Civ. P. 65 and to show cause at this hearing why [Respondent] should not be prohibited from removing Child from the jurisdiction until this litigation is concluded; and

4. Order that [Respondent] shall respond to the Verified Petition in writing within ten days of any hearing on the extension of the *ex parte* TRO so that this matter may be expedited as required by the Convention.

[Doc. 7 at 2–3]. Petitioner claims the TRO he seeks is warranted because he is likely to succeed on the merits of his ICARA claim, he will be irreparably harmed if a TRO is not issued, the balance of equities favors the issue of a TRO, and the public interest would be served by the issuance of a TRO. [See generally Doc. 7-1]. Petitioner contends that *ex parte* relief is warranted because "[t]here exists a real possibility that [Respondent] will flee" this district "with the Child if [she is] given notice of the[se] proceedings" and irreparable injury would result. [See Doc. 6-1].

Upon review and consideration, the Court finds that Petitioner is entitled to expedited consideration of the merits of the Petition and a TRO that (1) prohibits Respondent from removing the Child from this district and (2) requires Petitioner to deposit the Child's travel documents into the registry of the Court. Below, the Court briefly reviews each of the four (4) elements required for preliminary injunctive relief as applied to this case. The Court then separately addresses (1) why *ex parte* relief is appropriate in this matter; (2) why the Court will not require Petitioner to post a Rule 65(c) bond; and (3) why the Court deems it appropriate to expedite these proceedings.

A.   **Likelihood of Success on the Merits**

First, the Court finds that Petitioner is likely to succeed on the merits of his ICARA claim. See Parker, 275 F.3d at 1035. To succeed on a such a claim,

> The party seeking relief . . . must establish by a preponderance of the evidence that the child has been wrongfully removed or retained within

> the meaning of the . . . Convention. Under the Convention, the removal or retention of a child from his or her state of habitual residence is wrongful if the petitioner establishes by a preponderance of the evidence that: (1) the child has been removed or retained in violation of the petitioner's "rights of custody;" and (2) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been exercised but for the removal or retention.
>
> The Convention defines "rights of custody" to include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence. The terms "wrongful removal or retention" and "wrongfully removed or retained," as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child.

Garcia v. Varona, 806 F. Supp. 2d 1299, 1309 (N.D. Ga. 2011) (cleaned up) (citing Convention, arts. 3, 5; 42 U.S.C. § 11603(e)(1)(A); Pielage v. McConnell, 516 F.3d 1282, 1286 (11th Cir. 2008); and Furnes v. Reeves, 362 F.3d 702, 712 (11th Cir. 2004), abrogated on other grounds, Lozano v. Montoya Alvarez, 572 U.S. 1, 10 (2014)).

Here, the Petition establishes that the Child is a habitual resident of Argentina because he is a citizen of that country and lived there for the entirety of his life before coming to the United States in the fall of 2022 for what was supposed to be a time-limited trip. See Pet. ¶¶ 1, 10, 12–13; see also Ruiz v. Tenorio, 392 F.3d 1247, 1252–53 (11th Cir. 2004) (explaining that the phrase "habitual residence" "is not defined in any of the Hague Conventions," that "[c]ourts have been instructed to interpret the expression according to the ordinary and natural meaning of the two words it contains[] as a question of fact to be decided by reference to all the circumstances of

a particular case[,]" and that habitual residence can only change where there is a "settled intention to abandon the one left behind" and "an actual change in geography and the passage of a sufficient length of time for the child to have become acclimatized" to the new place of residence (cleaned up)).

Additionally, the Petition establishes that the Child's retention in the United States (i.e., away from his place of habitual residence in Argentina) is wrongful because (1) Petitioner had and was exercising decision-making rights related to where the Child lived and was educated at the time the Child traveled to the United States and (2) Petitioner did not authorize Respondent to take the Child to the United States for an unlimited amount of time.  See Garcia, 806 F. Supp. 2d at 1309.  With respect to the first point, the Petition shows that Argentine law gives parents, including Petitioner, a "right[] and obligation[] over their child's self and property for the purpose of protecting, developing and educating [him or her] in a comprehensive manner for as long as the child remains an unemancipated minor." See Cód. Civ. y Com. art. 638; see also Hanley v. Roy, 485 F.3d 641, 645 (11th Cir. 2007) ("The existence of 'rights of custody' are determined by the law of the country in which the child habitually resides at the time of removal.").  And it demonstrates that Petitioner exercised that right at the time Child came to the United States by "making parental decisions such as schooling and residence decisions" for the Child. See Pet. ¶¶ 12, 22, 32.

With respect to the second point, Petitioner only permitted the Child to come to the United States for a time-limited visit, and he "fully expected and was led to believe that [Respondent] would return Child to Argentina on November 14, 2022, per the[] express agreement and understanding" between Petitioner and Respondent. See id. ¶¶ 16–17, 19–20; see also Giampaolo v. Erneta, 390 F. Supp. 2d 1269, 1283 (N.D. Ga. 2004) (explaining that a travel authorization like the one Petitioner signed "was not an express authorization for [a] [c]hild to reside abroad" and was instead, "by its very title and terms, . . . only an authorization to 'travel'" ); Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1358–59 (M.D. Fla. 2002) (same).

Because the Petition supports that Respondent has wrongfully removed the Child from his place of habitual residence in Argentina by keeping him in the Untied States after November 2022, Petitioner is likely to succeed on the merits of his ICARA claim.

**B.     Irreparable Injury**

Second, the Court finds that a TRO is necessary to prevent irreparable injury. See Parker, 275 F.3d at 1035.  According to the Petition, Respondent has already absconded with the Child once under false pretenses (when she failed to return the Child to Argentina in November 2022 as promised).  See Pet. ¶¶ 15–16, 19–20, 23–24, 28–29, 36.  Petitioner's counsel has also certified that Respondent "has sufficient resources and connections to further remove the Child from the jurisdiction of this

9

Court, including but not limited to Venezuela, where she grew up and has family." [See Doc. 6-2 at 2]. In light of these circumstances, the Court finds that that there is real risk that Respondent will make further efforts to keep the Child from Petitioner by removing the Child from the Court's jurisdiction. And "[i]f Respondent were to flee with [the Child] again, beyond this Court's jurisdiction, 'the very purpose of the Convention and the ICARA would be defeated.'" See Mendoza v. Salado, Civil Action No. 1:21-CV-01795-SCJ, 2021 WL 3508690, at *3 (N.D. Ga. May 3, 2021) (quoting In re McCullough ex rel. McCullough, 4 F. Supp. 2d 411, 416 (W.D. Pa. 1998). "This, by definition, is irreparable harm." Id. (quoting McCullough, 4 F. Supp. 2d at 416); accord Mendoza v. Pascual, No. CV 615-40, 2015 WL 2152837, at *6 (S.D. Ga. May 7, 2015) (finding irreparable harm in a case pursuant to the Convention because "[i]f [the r]espondent were to remove [a child] from the court's jurisdiction, [the p]etitioner would be denied her opportunity to seek" the child's return). Accordingly, Petitioner has shown he would suffer irreparable injury if a TRO does not issue.

    **C.**    **Balance of the Equities**

Third, the Court finds that any harm that might come to Respondent by awarding Petitioner an order that prevents the Child from being removed from this district and requires the surrender of the Child's travel documents to the registry of the Court is outweighed by "the threatened injury" to Petitioner if such an order is

not issued. See Parker, 275 F.3d at 1035. The aforementioned relief will do nothing more than maintain the status quo while the Parties begin to litigate this case. See generally Pet. ¶¶ 15–16, 19–20, 23–24, 28–29, 36 (detailing how the Child has been present in this district for nearly a year); Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, (1974) (explaining that "the[] underlying purpose of" an *ex parte* TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" on a motion for preliminary injunction); Salado, 2021 WL 3508690, at *2 ("In order to deter any threat of re-abduction to another country, many courts have required that the parties deposit . . . the passports of the children with the court or other agency."). In that respect, a TRO granting such relief will cause Respondent no harm or, at the most, minimal harm.

However, the Court is not similarly persuaded with respect to Petitioner's request that Respondent be required to surrender her *own* travel documents to the Court. Rather, the Court finds that the harm Respondent might suffer if it were to grant that relief outweighs any harm Petitioner might suffer if the Court declines to award the same. See Parker, 275 F.3d at 1035. Though Petitioner has shown that irreparable injury would come to him if the Child was removed from the Court's jurisdiction, he has not shown that irreparable injury would follow if Respondent left the jurisdiction without the Child. This is so because it is the Child's presence in

11

this district (and not that of any particular respondent) that allows this Court to determine whether Petitioner is entitled to relief pursuant to the Convention and ICARA. See 22 U.S.C. § 9003 (providing that venue is proper in an ICARA action "where the child is located at the time the petition is filed"). And because Petitioner has not shown that any irreparable injury would flow from Respondent being allowed to leave the jurisdiction without the Child, it follows that "the threatened [irreparable] injury" to Petitioner does not "outweigh[] the harm" an injunction preventing Respondent from traveling outside the district "would cause to" her. See Parker, 275 F.3d at 1035.

### D.    The Public Interest

Fourth, the Court finds that the public interest would be served by issuing a TRO. See Parker, 275 F.3d at 1035. "The public has an interest in seeing the custody rights of parents residing in other nations enforced in the United States[] courts through the . . . Convention and ICARA," and that interest is served by the TRO the Court issues here. See Salado, 2021 WL 3508690, at *3; Pascual, 2015 WL 2152837, at *7.

### E.    Granting Relief *Ex Parte*

Fifth, the Court finds that *ex parte* relief is appropriate in this matter. As required by Rule 65(b)(1)(B), Petitioner's counsel has "certifie[d] in writing" that notice to Respondent should "not be required" before this order issues because such

notice would increase the risk that Respondent will remove the Child from the Court's jurisdiction and prevent Petitioner from obtaining meaningful relief in this matter. [See Doc. 6-2]; see also FED. R. CIV. P. 65(b)(1)(B). Consistent with this certification and the discussion of irreparable injury above, see supra pp. 9–10, the Court finds that if Respondent was to learn of this case before being enjoined from removing the Child from this jurisdiction, "immediate and irreparable injury, loss, or damage w[ould] result to" Petitioner before Respondent "c[ould] be heard in opposition. See FED. R. CIV. P. 65(b)(1)(A); see also supra pp. 9–10.

### F.  Security

Sixth, the Court finds it appropriate to waive Rule 65(c)'s security requirement at this time. "[I]t is well-established that the amount of security required by . . . [R]ule [65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (cleaned up). Here, the Court finds it appropriate to waive the security requirement given that the harm Respondent could suffer as a result of the TRO is minimal or non-existent. See APR Energy, LLC v. First Inv. Grp. Corp., 88 F. Supp. 3d 1300, 1324 (M.D. Fla. 2015) (observing that "an injunction bond is intended to afford security only for those damages, if any, that might be proximately caused by the wrongful issuance of an injunction" and declining to require such a bond in a case

where the potential harm to the defendants from the injunction the court issued was wholly speculative (cleaned up)).

### G. Expedited Consideration of the Merits of the Petition

Finally, the Court closes by considering the requests Petitioner embedded in the TRO Motion that the Court set an expedited schedule for the consideration of the merits of the Petition and require the Child to appear at the initial hearing the Court will hold regarding the same. [See Doc. 7 at 3]. The Convention proposes a six (6)-week timeframe from the initial filing of a petition to decision in this action. Chafin v. Chafin, 742 F.3d 934, 937 (11th Cir. 2013). The Supreme Court has stated that "courts can and should take steps to decide these cases as expeditiously as possible." Chafin v. Chafin, 568 U.S. 165, 179 (2013). Consistent with the need to handle this matter expeditiously, the Court grants Petitioner's request for prompt consideration of the merits of the Petition and sets forth a schedule below for (1) service on Respondent, (2) a hearing regarding the schedule for further proceedings in this matter and converting the TRO the Court herein issues into a preliminary injunction, and (3) Respondent's response to the Petition. The Court declines to order that the Child personally appear at the aforementioned hearing.

### IV. Conclusion

For the foregoing reasons, the Court **ENJOINS AND PROHIBITS** Respondent Marjorie Isabel Martinez Reed or any others acting on her behalf or at

her direction from removing the child known as A.D.O.M. from the Northern District of Georgia while this order is in effect.[3] The Court further **ORDERS** Respondent to, no later than three (3) days after being served with this order, deposit into the registry of this Court any and all travel documents associated with the child known as A.D.O.M., including any Argentine, Venezuelan, or American passports.[4] The Court **DIRECTS** the Clerk to hold such documents in the Court's registry until the Court orders otherwise. The Court will hold these documents in its registry so long as this order (and any preliminary injunction that may follow it) remains in effect. The Court **WAIVES** the bond requirement of Rule 65(c). The injunctive relief provided for in this paragraph expires on August 31, 2023, at 2:15 p.m. unless the Court orders otherwise.

Next, the Court **ORDERS** the Parties to adhere to the following deadlines:

- No later than **Wednesday, August 23, 2023**, Petitioner shall personally serve Respondent with (1) the Petition and all attachments thereto, (2) the TRO Motion and all attachments thereto, and (3) a copy of this order.

---

[3] The Northern District of Georgia includes the following counties: Banks, Barrow, Bartow, Carroll, Catoosa, Chattooga, Cherokee, Clayton, Cobb, Coweta, Dade, Dawson, DeKalb, Douglas, Fannin, Fayette, Floyd, Forsyth, Fulton, Gilmer, Gordon, Gwinnett, Habersham, Hall, Haralson, Heard, Henry, Jackson, Lumpkin, Meriwether, Murray, Newton, Paulding, Pickens, Pike, Polk, Rabun, Rockdale, Spalding, Stephens, Towns, Troup, Union, Walker, White, and Whitfield. See 28 U.S.C. § 90(a).

[4] Respondent may make such a deposit at the public filing counter located on the twenty-second floor of the United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303.

- On **Tuesday, August 29, 2023, at 2:30 p.m.**, the Parties shall appear at a hearing before the undersigned in Courtroom 1708, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303. The Court **ORDERS** that, at the hearing: (1) Respondent **SHOW CAUSE** why the Court should not grant a preliminary injunction extending the relief provided for in the previous paragraph through the end of this case and (2) both Parties be prepared to discuss the schedule, date, and procedure for the trial on the merits in this matter.
- No later than **Friday, September 8, 2023**, Respondent shall file her response to the Petition.

The Court strongly recommends that Respondent obtain counsel to represent her in this matter.

In accordance with the aforementioned directives, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's "Motion for *Ex Parte* Expedited Motion for a Temporary Restraining Order." [Doc. 7]. The Court **GRANTS** the motion to the extent it requests the relief the Court orders herein. The Court **DENIES** the motion in all other respects.

**SO ORDERED**, this 17th day of August, 2023 at 2:15 p.m.

*Eleanor L. Ross*
───────────────────────
Eleanor L. Ross
United States District Judge
Northern District of Georgia